IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE MORGAN STANLEY ABS CAPITAL I INC. TRUST 2007-NC1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-NC1,<br><br>Plaintiff,<br><br>vs.<br><br>LEIGAFOALI'I TAFUE WILLIAMS, fka LEIGAFOALI'I TAFUE KOEHNEN; PAPU CHRISTOPHER WILLIAMS; REAL TIME RESOLUTIONS, INC.; CAROLYN RUTH KOEHNEN, AS TRUSTEE OF THE CAROLYN R. KOEHNEN REVOCABLE LIVING TRUST U/A, DATED APRIL 14, 1986; and JOHN DOES 1-5,<br><br>Defendants. | CIVIL NO. 11-00632 JMS RLP<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

**MEMORANDUM IN SUPPORT OF MOTION**

I. **INTRODUCTION**

Plaintiff cannot show complete diversity because its principal place of business as reflected in its mortgage assignment is Texas, identical to Defendant Real Time Resolutions, Inc.

Plaintiff has no standing. It has actual notice that its assignment is a nullity

without liquidation trustee approval.

Finally, this identical foreclosure dispute was removed to the federal district court for the District of Hawaii on November 11, 2009. After the entry of several summary judgment orders by the federal district court by the Hon. Susan Oki Mollway, this case was remanded to state court. No final judgment has been entered in the state court proceedings.

## II. This Court Has No Jurisdiction to Hear This Matter Due to a Lack of Complete Diversity of the Parties.

In Plaintiff Deutsche Bank National Trust Company, as Trustee Morgan Stanley ABS Capital I Inc. Trust 2007-NC1 Mortgage Pass-Through Certificates, Series 2007-NC1 (hereafter "Deutsche Bank")'s complaint herein at page 3, ¶2, it alleges that its "principal place of business" for purposes of this Court's jurisdiction is California. That same complaint also alleges at page 3, ¶5 that Defendant Real Time's principal place of business is Texas. The problem with Plaintiff's allegations regarding its principal place of business is that the mortgage and note assignment on which it relies for standing to foreclose herein (Exhibit 4 to the complaint) states in part:

> Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc., MSAC 2007-NC1, whose principal place of business and post office address is c/o Saxon Mortgage Services, Inc., 4708 Mercantile Dr. N., Fort Worth, TX 76137-3605., hereinafter called the "Assignee."

Since Plaintiff's principal place of business for purposes of foreclosure herein is Texas rather than California, complete diversity does not exist.

*Mayes v. Fujimoto*, 181 F.R.D. 453 (1998).

This discrepancy is not an inadvertent oversight. The designation of Plaintiff's principal place of business for purposes of foreclosure around the United States is part of a nationwide scheme by Plaintiff, as one judge holds, to perpetrate a fraud or malfeasance on the Court. In Plaintiff's mortgage foreclosure practice, it designates its principal place of business in different states, based on its strategy to perfect foreclosure with the use of mortgage assignments, signed by "robo-signers."

Judge Arthur M. Schack, Supreme Court, King's County, New York, has concluded that this ongoing scheme by Plaintiff is the "Kansas City Shuffle." *Deutsche Bank National Trust Company as Trustee under the Pooling and Service Agreement Series Index 2006-AR6 v. Maraj*, 856 N.Y.S.2d 497, WL 253926 (2008). Exhibit A. In *Maraj, supra*, Plaintiff Deutsche Bank, upon the default of defendants in a foreclosure action, made an application for an order of reference, (i.e., foreclosure) on premises located at 255 Lincoln Avenue, Brooklyn, New York. Judge Schack denied the Plaintiff's application because he believed that Plaintiff Deutsche Bank may be committing fraud or malfeasance on the court. In

this decision dated January 31, 2008, the court was concerned with the fact that Deutsche Bank claimed its principal place of business was Kansas City, Missouri, and had the identical office address of the assignor, defunct Indymac Bank and MERS at Building B, 901 East 104th Street, Suite 400/500, Kansas City, Missouri. The court was also concerned that the authorized representative who signed for the assignor, Ms. Johnson-Seck, was a "robo-signer" who also signed a default affidavit as a vice president of the assignee, Deutsche Bank. The Kansas City assignment documents and affidavit were notarized in Texas. The Johnson-Seck signatures on both the July 3, 2007, assignment to Deutsche Bank and the July 31, 2007, affidavit are identical. The Court held in part:

> Did Ms. Johnson-Seck change employers from July 3, 2007 to July 31, 2007, or does she engage in self-dealing by wearing two corporate hats?
> . . .
> The Court is concerned that there may be fraud on the part of plaintiff DEUTSCHE BANK, or at least malfeasance. Before granting an application for an order of reference, the Court requires an affidavit from Ms. Johnson-Seck, describing her employment history for the past three years.
>
> Further, the Court requires an explanation from an officer of plaintiff DEUTSCHE BANK as to why, in the middle of our national subprime mortgage financial crisis, DEUTSCHE BANK would purchase a non-performing loan from INDYMAC, and why DEUTSCHE BANK, INDYMAC and MERS all share office space in Suite 400/500.
>
> With the assignor MERS and assignee DEUTSCHE BANK appearing to be engaged in possible fraudulent activity by:

4

> having the same person execute the assignment and then the affidavit of facts in support of the instant application; DEUTSCHE BANK's purchase of a non-performing loan from INDYMAC; and, the sharing of office space in Suite 400/500 in Kansas City, the Court wonders if the instant foreclosure action is a corporate "Kansas City Shuffle," a complex confidence game. In the 2006 film, *Lucky Number Slevin*, Mr. Goodkat, (a hitman played by Bruce Willis), explains (in memorable quotes from *Lucky Number Slevin*, at www.imdb/title/425210/quotes).
>> A Kansas City Shuffle is when everybody looks right, you go left . . . It's not something people hear about. Falls on deaf ears mostly ... No small matter. Requires a lot of planning. Involves a lot of people. People connected by the slightest of events. Like whispers in the night, in that place that never forgets, even when those people do.
>
> In this foreclosure action is plaintiff DEUTSCHE BANK, with its "**principal** place of business" in Kansas City attempting to make the Court look right while it goes left?

*Maraj, supra,* at ¶¶ 1, 2.

Another case involved in this same "Kansas City Shuffle" is *Scarola v. Deutsche Bank National Trust Company as Trustee for the Holders of Gsaa Home Equity Trust 2004-10 Asset-Backed Certificates Series 2004-10,* 2011 WL 5335618 (M.D.Fla.) (8/15/2011). Exhibit B. This case involves the filing of a foreclosure action by Deutsche Bank in Florida state court. The foreclosure defendant filed a second case against Deutsche Bank in another Florida state court. The second case was removed from the state court by Defendant Deutsche Bank on February 9, 2011. The federal court examined the question of whether or not there

was diversity as follows:

> Deutsche Bank removed the case to this Court base[d] on diversity of citizenship. The Plaintiff is a citizen of Florida and the Defendant Deutsche Bank is a national banking association with its principle place of business in New York.

Based on Deutsche Bank's representations that its principal place of business was New York, the federal district court found that it had diversity jurisdiction.

The next Deutsche Bank case involving the "Kansas City Shuffle" is *Kunzman v. Deutsche Bank National Trust Company, as trustee for Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-W4*, 2011 WL 4055286 (D. Colo.) (9/12/11). Exhibit C. In *Kunzman,* this case was before the United States District Court for the District of Colorado, Philip A. Brimmer, District Judge. It is an order of remand by Judge Brimmer in a mortgage foreclosure case for the failure of Deutsche Bank to prove diversity. Deutsche Bank invoked 28 USC § 1332(a) (1) as the basis for the court's diversity jurisdiction. Deutsche Bank alleged that it was incorporated in New York and therefore a citizen of that state. Deutsche Bank represented to the Colorado federal district court that, pursuant to its state court complaint, it was only a citizen of New York. The federal district court judge, however, pointed out that in that same state court complaint, Deutsche Bank had alleged that it was a corporation with a corporate address in California. The federal district court judge also pointed to

another Deutsche Bank case, *Roper v. Saxon Mortgage Services, Inc.*, 2009 WL 1259193, at *2 (N.D.Ga. May 5, 2009), where Deutsche Bank alleged, ("Defendant Deutsche Bank National Trust Company exists under the laws of the State of California with its principal place of business in California.") Judge Brimmer held as follows:

> The foregoing deficiencies in Deutsche Bank's jurisdictional averments raise a number of uncertainties regarding the Court's exercise of jurisdiction over this matter. Where uncertainties exist regarding the Court's jurisdiction, those uncertainties are resolved in favor of remand.

The complaint herein was filed in this Court on October 20, 2011, alleging complete diversity. Based on the above, Plaintiff Deutsche Bank has the burden in this court to demonstrate how its principal place of business was Kansas City, Missouri, in January of 2008; in Tarrant County, Texas, January, 2009; in New York, August and September 2011, and now, one month later, it is California. Defendants Williams suggest that Plaintiff needs to either produce numerous corporate moving van receipts for the past three years or just admit that this is nothing more than forum shopping, utilizing what Judge Schrack has described as the "Kansas City Shuffle."

III. **<u>Deutsche Bank's Assignment Is a Nullity. It Has No Standing.</u>**

The assignment which forms the basis of Plaintiff's standing herein is a

nullity. When it was executed on January 13, 2009, Plaintiff had actual knowledge that without liquidation trustee approval, it was a nullity. Trustee approval is not reflected on the assignment. The assignment notarization provides as follows:

> STATE OF Texas    )
>                            ) ss.
> COUNTY OF Tarrant   )
>
> On this 13th day of January, 2009, before me personally appeared Valerie Clark, to be[sic] personally known, who by me duly sworn, did say that they are [sic] the Authorized Signatory, respectively[sic], of Home 123 Corporation, and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and the said officers acknowledged said instrument to be the free act and deed of said corporation.
>
> (seal)       <u>Angelo Dupon Mayfield</u>
>                      Notary Public, State of Texas
>                      My Commission expires October 12, 2012

At the time Valerie Clark made her attestation as the Authorized Signatory for Home 123's Board of Directors, there was no Home 123 Board of Directors or any corporate officers legally in existence to authorize anything. Six months before the assignment, a bankruptcy liquidation trustee was appointed as the legal successor to Home 123. August 1, 2008, is the effective date of the New Century Liquidating Trust in joint bankruptcy. *In re New Century TRS Holdings, Inc. v. New Century Liquidating Trust*, 407 B.R. 576 (2009) at 585. Exhibit D. In *New Century,* above, the court held as follows:

> The [liquidation] plan had become effective on August 1, 2008 (the "effective date") . . . On the effective date, the liquidating trust was created with Alan M. Jacobs as trustee. . . Also on that date, the Creditors' Committee was dissolved; the Plan Advisory Committee (the "PAC") was formed; <u>debtors' officers and directors ceased serving and were replaced by Jacobs; debtors' assets were distributed to the liquidating trust; and NCFC's outstanding common and preferred stock, as well as all notes, securities, and indentures, were cancelled.</u>
> [*emphasis added*]

Because Plaintiff is a major creditor in the identical bankruptcy proceedings, *In re New Century TRS Holdings, Inc.*, 390 B.R. 140 (2008), fn. 12 at 148, Plaintiff Deutsche Bank had actual notice that Home 123 had no board of directors and officers as of August 1, 2008. It also knew that all of Home 123's assets were transferred to the Liquidating Trust on the same date so that Home 123 had nothing to assign on January 13, 2009. As such, Plaintiff's efforts herein to claim standing on an assignment from a legally non-existent board of directors, and corporation without assets on the date of assignment and without express authorization of the liquidation trustee reflected on the assignment document is, without further explanation, a nullity, an unfair and deceptive practice, and a fraud on the court. *Maraj, supra; Kawamata Farms v. United Agri Products*, 88 Hawai`i 214 (1997) at [69][70][71][72][73][74] at 257-258.

A case directly on point requiring express post-August 1, 2008, approval for assignment from the identical liquidation trustee is *New Century Mortgage Corporation v. Braxton*, 2010 WL 59277 (Mass.Land.Ct.) (2010). Exhibit E. In *Braxton*, where foreclosure plaintiffs attempted to utilize post-August 1, 2008 assignments from bankrupt New Century for standing, the court held that plaintiffs had not proved standing without express trustee approval, as follows:

> Plaintiffs have the additional obstacle of the pending bankruptcy of New Century to overcome; essentially they must show not only that the mortgages were transferred from New Century to Consumer Solutions REO, but that <u>the transfers took place either before the bankruptcy, or with leave of the bankruptcy court or liquidating trustee.</u> The Plaintiffs bear the burden of proving their standing, and their factual allegations are not viewed in an indulgent light. *See Callahan, supra,* at 710-11.

*Braxton, supra,* at 5. [*emphasis added*]

In addition to the above failure to secure trustee approval, it is also impossible for Plaintiff to have standing as the "trustee" of the Morgan Stanley ABS Capital I Inc. Trust 2007-NC1 ("Morgan Stanley Trust") based on the January 13, 2009, assignment. The owner/seller of all of the mortgages securitized in this January 2007 investment trust was not Home 123; it was NC Capital Corporation, a corporation affiliated with Home 123Corporation , and which is also a debtor in the identical bankruptcy proceedings. Exhibit F, p.1, fn1. Home

123 originally held title in 2006 to the mortgage on Defendants' premises as the retail lender. According to the bankruptcy debtors' lawyer, NC Capital Corporation then purchased the loans from Home 123 and resold them for inclusion into securitized trusts. See Exhibit G, p. 4, ¶9, 11; p. 9, ¶28, 32. In order for Plaintiff to have standing as trustee of the Morgan Stanley Trust, Defendants Williams' mortgage and mortgage note had to be included in the Pooling and Servicing Agreement formed by Morgan Stanley ABS Capital I, Inc., and Plaintiff in January 2007. *See* Exhibit U. This Pooling Agreement indicates on its face that it opened on January 1, 2007, and closed on January 26, 2007. Exhibit U at pp. 2, 20. As owner/seller of all the mortgages in the trust, NC Capital Corporation represents that as of the date of closing on January 26, 2007, it had fee simple title to all the mortgage notes and mortgages included in the trust:

> The Seller is the sole owner and holder of the Mortgage Loan and the indebtedness evidenced by each Mortgage Note[.]

*See* Exhibit U at pp. 78, 79.

Next, the "depositor" into the trust, Morgan Stanley ABS Capital I Inc. Trust 2007-NC1, Inc., also represents at p. 84 of Exhibit U that as of the January 26, 2007, closing date, "the Depositor has good title to the Mortgage Loans, free and clear of any liens, charges, claims or encumbrances whatsoever." Finally, Plaintiff Deutsche Bank as the trustee of this trust represents at p. 107 of

11

Exhibit U that it has "received the original Mortgage Note . . . with all intervening endorsements showing a complete chain of endorsement from the originator [Home 123] to the last endorser."[1] None of this is reflected on the January 13, 2009, assignment from Home 123 to Plaintiff. The January 13, 2009, assignment bypasses all the intervening owners endorsees without explanation as if they did not exist. They do.

It is impossible based on the above for Home 123 to have had title to this mortgage loan on January 13, 2009. Since Plaintiff is claiming standing as the trustee of a mortgage loan that had to have been securitized in January 2007, two years before the January 13, 2009, assignment, the 2009 assignment conflicts with and thus negates Plaintiff's express "trustee" basis for standing before this court.

IV. **Dismissal is Warranted Under the Defense of Abatement or the Pending Action Doctrine**

"Abatement, also known as the "pending action doctrine," holds that where a claim involves the same subject matter and parties as a previously filed action so that the same facts and issues are presented, resolution should occur through the prior action and the second suit should be dismissed." *Planned Parenthood of Kansas v. Donnelly*, 2009 WL 2341890, *3 (Mo.App. W.D., July 31, 2009). "The rule in question is not limited to cases in which the second action is brought by the

---

[1] The loan schedules on the 2007 Trust do not itemize any specific mortgage loans or notes that have been securitized.

same party as the first, and may apply where the plaintiff in the second action can, as a defendant in the first action, properly assert a counterclaim." *Nielsen v. Nielsen*, 491 A.2d 1112, 1115 (Conn.App. 1985).

This identical foreclosure dispute was before the Hawai`i federal district court in USDC Civil No. 09-00535 SOM-KSC, after the 2009 removal from state court. This court is requested to take judicial notice of same, pursuant to 201, 28 USCA. That case has been remanded to the state court and is presently before the Hon. Bert I. Ayabe, Circuit Court Judge of the First Circuit. No final judgment has been entered in that case. Defendant Lei Williams has before the state court the motion attached hereto (without exhibits) as Exhibit F, raising some of the identical issues raised herein and for entry of a final, appealable order. That motion is set for hearing on Tuesday, January 24, 2012.

THEREFORE, for the above reasons, this claim should be dismissed.

Dated: Honolulu, Hawaii, December 19, 2011.

/s/ *JAMES J. BICKERTON*

JAMES B. BICKERTON
Attorney for Defendants Leigafoali'i Tafue
Williams and Papu Christopher Williams